## BLOUNT v. WALKER.

1. Testatrix, residing in South Carolina, gave her estate, real and personal, in remainder, to such person as her daughter might appoint "by her last will and testament duly executed." *Held*, that the power could be exercised only by a last will and testament executed according to the forms required in this State, and that a will executed according to the laws of North Carolina (where the daughter died domiciled), but not as required by South Carolina law, was not a valid execution of this power.
2. The admission of the daughter's will to probate in the proper court of North Carolina, and also here on exemplification, does not make such will a valid execution of this power.
3. A point raised in the pleadings, before the Circuit Judge, and in the exceptions, but not passed upon by the Circuit Judge, is not properly before this court for consideration.
   MR. CHIEF JUSTICE SIMPSON, *dissenting.*

Before WALLACE, J., Richland, July, 1887.

Mrs. Sarah J. Harris died at her home in Columbia, S. C., on December 5, 1885, leaving of force a last will and testament

whereby she devised and bequeathed her entire estate (consisting of bonds and stocks and a lot of land in the said city of Columbia) to Julius H. Walker in trust for her daughter, Mrs. Mary Delia Blount, for life, with the following powers and limitations, as expressed in the 1st and 3d items of her will:

*Item* I. I give, bequeath, and devise to my nephew, Julius H. Walker, and his heirs, to the use of the said J. H. Walker and his heirs, all the estate, real and personal, of which I may die seized, possessed, and entitled to: in trust, nevertheless, to permit my daughter, Mrs. Mary Delia Blount, for and during the term of her natural life (unless the trust be sooner executed, as is hereinafter provided in item II.), to receive unto her own sole, separate. and exclusive use, benefit, and behoof, all the rents, issues, and profits of the said estate, upon her own receipts and acquittances. And to the said J. H. Walker, in his character as trustee as aforesaid, full power and authority is given to sell, exchange, or transfer, if in his judgment expedient, any part of the estate hereby given to him in trust, and to execute all necessary papers to that end, whenever he is thereunto requested by a paper in writing, executed by said Mrs. Blount in the presence of some clerk of a court of record, who shall certify, under his hand and official seal, that the said request was so signed separately and privately in his presence; and the said trustee, upon such sale, exchange, or transfer, shall either reinvest the proceeds, or else turn the same over to the said Mrs. Blount for her sole, separate, and absolute use, freed and discharged of all trusts, as the said Mrs. Blount may direct by her writing, executed in manner and form as required aforesaid, for the request to sell, exchange, or transfer; *provided*, that the said J. H. Walker, as trustee as aforesaid, is satisfied that the disposition so requested by said Mrs. Blount, is her free and untrammelled wish, and is for her own exclusive benefit and behoof; but if not so satisfied, he shall reinvest the proceeds according to his best judgment, and under the rules of law. The power hereinabove given to the said J. H. Walker, as trustee as aforesaid, is a continuing power and shall not be exhausted by one or more exercises thereof, but shall continue in full force so long as the trust remains unexecuted and any portion of the trust estate remains.

*Item* III. Upon the death of the said Mrs. Blount, the said property, or so much thereof as remains unconsumed and undisposed of in the hands of said J. H. Walker, trustee as aforesaid, is hereby bequeathed and devised to the issue of the said Mrs. Blount, to them and their heirs forever, *per stirpes* and not *per capita;* and if the said Mrs. Blount die without issue surviving

her at the time of her death, then the same is devised and bequeathed to such person or persons and in such proportions as the said Mrs. Mary Delia Blount may appoint by her last will and testament duly executed, to the said appointees and their heirs forever; and upon the death of the said Mrs. Blount, the trusts of this will shall become instantly executed in favor of the person or persons in this item designated as remaindermen, without any relinquishment or transfer of trust by the said trustee.

Julius H. Walker was nominated and qualified as executor, his residence being in Columbia, S. C.

Mrs. Blount returned, after her mother's death, to her husband's home in Wilson, N. C., where she died without issue in April, 1886, leaving of force a last will whereby she appointed all of her mother's estate to her husband, William H. Blount, the plaintiff herein. This will of Mrs. Blount was duly executed according to the laws of North Carolina, but not according to the laws of this State, in this—that the three witnesses did not sign in the presence of each other. The will was duly admitted to probate in the proper court of North Carolina, and an exemplification was admitted to probate in the Probate Court of Richland County, in this State.

W. H. Blount having demanded Mrs. Harris's estate from Walker, the executor, and been refused, he filed his complaint against said Walker and Mrs. C. S. Walker, demanding an account and the possession of this property. The executor submitted himself to the instructions of the court, and Mrs. Walker answered claiming the entire estate as the sole heir of her sister, Mrs. Harris, since the death of Mrs. Blount, alleging that Mrs. Blount had not duly executed the power conferred upon her by her mother's will.

The decree of the Circuit Court was as follows:

The Court of Probate of North Carolina is, under the laws of N. C., a court of general jurisdiction in all matters testamentary. The exemplification of the judgment of that court, establishing this will, was properly proved according to the acts of Congress.

Mrs. Blount's will is not executed according to the laws of S. C. The question to be determined is whether Mrs. Blount's will is a valid execution of the power contained in Mrs. Harris's will? It is conceded in the argument, and is undoubtedly sound,

that the appointee, under a power like the one under considera-
tion, takes under the instrument creating the power, and not
under the instrument of appointment. And in this case Mrs.
Harris's will expressly conveys the property to the appointee
under the power. The only requisite required by Mrs. Harris's
will for the execution of this power, is that the same shall be by
"will duly executed"; and in this case that formality has been
complied with, and is shown by the judgment of the court of her
domicile.

It is therefore ordered, adjudged, and decreed, that the power
is well executed, and the plaintiff is entitled to the property set
out in the complaint and in the hands of the defendant, Julius H.
Walker. It is further ordered, that the defendant, Julius H.
Walker, do account before the master for his actings and doings
in the premises, and that he pay over and surrender to the plain-
tiff, or his attorney, the said estate.

From this decree defendants appealed upon the grounds that
his honor erred in adjudging Mrs. Blount's will a due execu-
tion of the power conferred upon her in Mrs. Harris's will; and
in failing to adjudge that Mrs. Walker was entitled to all of Mrs.
Harris's estate.

*Messrs. Pope & Shand*, for appellants.

*Messrs. Allen J. Green* and *Hugh F. Murray* (of N. C.),
contra.

April 23, 1888. The opinion of the court was delivered by

MR. JUSTICE McIVER. There can be no doubt that the
donor of a power may prescribe the particular mode in which the
power is to be exercised, and there is as little doubt that there
can be no valid execution of the power unless the mode prescribed
is strictly complied with. *Sugd. on Powers*, chap. 5, section 3.

So that the essential inquiry in all cases of this kind is: 1st.
What is the mode prescribed by the donor of the power for its
execution? and 2nd. Whether such mode has been strictly com-
plied with?

Now, in this case, the mode prescribed by the donor of the

power is expressed in these words—''by her last will and testament duly executed''—and the controlling question is, what was the intent of Mrs. Harris in using those words? Did she mean a will duly executed according to the laws of South Carolina, or did she mean a will duly executed according to the laws of any State or country in which the donee of the power might happen to be domiciled at the time of her death? Inasmuch as it is conceded that Mrs. Harris was, at the time of her death, and always had been, a resident of South Carolina; that her will was executed here according to the laws of this State, and that the property therein disposed of was all located here, it seems to us that her language in describing the mode prescribed for the execution of the power, must be interpreted to mean exactly what such language is usually understood to signify here, unless there is something in the context which would impart to it a different signification.

For the rule, as we understand it, is that in interpreting a will, a contract, or any other instrument in writing, the words must be taken in the sense which they usually bear in the place where such instrument in writing is executed. The purpose is to ascertain the intent of the parties, and where there is no ambiguity in the language used, such intent must be gathered solely from the words of the instrument, and those words must be interpreted in their usual and ordinary sense in the place where they are used. This rule is not only fully supported by authority, but by reason and common sense. A person, in a particular State or country, using words which, in that locality, bear a specific and well defined meaning, would naturally, and we may say necessarily, be regarded as using such words in that sense, unless there was something in the paper itself which would indicate that the words were used in a different sense.

Now, apply this doctrine to the case under consideration. Here was a South Carolina lady making her will in this State, whereby she was undertaking to dispose of property located here, and in doing so she confers a power which the donee can only exercise ''by her last will and testament *duly* executed.'' It seems to us that, in the absence of anything in the will indicating a different purpose, these words must be interpreted to

mean what they ordinarily and usually signify here; that is, a will duly executed according to the laws of South Carolina, for that is what those words, when used here, usually and ordinarily, and we may say, universally signify here.

Now, is there anything in the will of Mrs. Harris which would indicate that she intended to use those words in a different sense? We must confess that we are unable to find anything of the kind. On the contrary, when we look to other parts of the will and find that the testatrix has taken unusual and extraordinary precautions to guard Mrs. Blount, the donee of the power, from any imposition or undue influence in exercising the power conferred by the will, to call upon the trustee "to sell, exchange, or transfer" any of the property given to Mrs. Blount for life, it would be difficult to believe that Mrs. Harris intended that she should be deprived of that protection which the laws of South Carolina throw around a testator, by requiring that his last will and testament shall be executed with all the solemnities required by our statute. Mrs. Harris manifestly regarded her daughter as a person liable to, and in danger of, being improperly influenced by some one, in the disposition of her property, and it can hardly be supposed that she intended that her daughter should exercise the power of absolutely disposing of this property by will without the observance of those forms which she must be assumed to have known the wisdom of her State had prescribed for the protection of testators from undue influence.

It is said, however, that if Mrs. Harris had intended that Mrs. Blount should exercise the power of appointment only by a will executed in the manner prescribed by our statute, it would have been very easy for her to say so by the addition of a very few words to those prescribing the mode of appointment—that she might have said, "by her last will and testament duly executed," *according to the laws of South Carolina.* But according to our view, that is precisely what the words used mean, and the additional words suggested would have been mere surplusage. If, however, Mrs. Harris really intended that the power conferred could be exercised by the donee by her last will and testament, executed anywhere, and according to the laws of any place where Mrs. Blount might happen to be domiciled, then additional words

would have been necessary to express such an intention, and the testatrix should have said, "by her last will and testament duly executed" *according to the laws of the place where Mrs. Blount might reside or be domiciled.*

Suppose the mode proscribed for the execution of the power had been "by deed duly executed," can there be a doubt that those words would be interpreted to mean an instrument in writing, signed, sealed, and delivered in the presence of two subscribing witnesses? And why? Simply because that is the meaning of the word "deed" here. For the same reason the words used in the will under consideration must be interpreted, a will duly executed according to the laws of South Carolina.

The fact that the paper alleged to be the will of Mrs. Blount has been admitted to probate in North Carolina, and an exemplification thereof in this State, does not affect the question. This paper was doubtless a valid will in North Carolina, sufficient to pass any property which Mrs. Blount was entitled to in her own right in that State, and any personal property which she owned anywhere, and was, therefore, no doubt, properly admitted to probate there, as well as here, upon the exemplification under the statute. But the question here is, not whether Mrs. Blount has made a will disposing of her own property, but whether the paper propounded as such is a valid execution of the power conferred by the will of Mrs. Harris; and for the reasons above stated we do not think it is.

Under the view taken by the Circuit Judge it was unnecessary for him to consider or determine the other question, discussed here, as to who would be entitled as heirs at law of Mrs. Harris to the property in the event of the failure to exercise the power conferred by her will, and accordingly he made no decision upon that subject. That question is, therefore, not properly before us at this stage of the case. The powers of this court being appellate only, so far as cases like this are concerned, we have no authority to decide, originally, any question, but are confined to a review of the judgments of the Circuit Court, and as that court has rendered no judgment upon this question, there is nothing before us for review, so far as such question is concerned. The case must, therefore, be remanded to that court for the considera-

tion and determination of the question, which now properly arises as to who will be entitled to the property involved in this controversy as heirs at law of Mrs. Harris—whether those who stood in that relation to her at the time of her death, or those who occupied that position at the time of the death of the life tenant, Mrs. Blount, together with any other questions incidental thereto.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case remanded to that court for such further proceedings as may be necessary to carry out the views herein announced.

MR. JUSTICE McGOWAN concurred.

MR. CHIEF JUSTICE SIMPSON *dissenting.* [Omitting the statement.] The appeal therefore involves, in the first instance, the single question, whether his honor erred in decreeing in favor of the respondent.

The following legal propositions will be conceded, no doubt : First. That the disposition by will of real property located in a State (South Carolina), must be made (under the doctrine of *rei sitae*) according to the laws of said State (South Carolina), and of personal property according to the laws of the domicile of the owner. *Story Confl. Laws,* § 474 ; 1 *Redf. Wills,* *398. Second. That where a testator devises and bequeaths property to one for life, with power on the part of the life tenant to appoint one to the remainder, if the power is properly executed, the appointee will take by virtue of the will of the original testator, and not by the execution of the power. In other words, the executed power becomes a part of the will of the original testator, as much so as if it had been originally incorporated therein. *Pulliam* v. *Byrd,* 2 *Strob. Eq.,* 137; *Robinson* v. *Hardcastle,* 2 *T. R.,* 252 ; 3 *Am. & Eng. Encyclo. Law,* 633 ; *Tatnall* v. *Hankey,* 2 *Moore P. C.,* 342 ; *Thompson* v. *Perry,* 2 *Hill Ch.,* *214; 29 *A. D.,* 68.

It follows from these propositions that if Mrs. Blount legally executed the power given her by Mrs. Harris, Mr. Blount, her husband, became a beneficiary of Mrs. Harris precisely as if Mrs. Harris had named him in her will as devisee and legatee of the property in question, in which event both the law of the *situs*

and of the domicile would be complied with, as there is no doubt that the will of Mrs. Harris was executed according to the laws of this State, and that the real estate and the personalty were both hers, and both within the State.

The turning point of the case, then, is, did Mrs. 'Blount legally execute the power of appointment given her ? If so, then the respondent takes under the will of Mrs. Harris, which, as we have said, meets the demands of both the *situs* and of the domicile—*lex rei sitæ, lex domicilii.* Now, Mrs. Blount was invested with power, not to dispose, but to appoint "by her last will and testament *duly executed.*" Did she *duly* execute a last will and testament in which the respondent was the appointee ? There is no doubt but that she executed a paper in North Carolina, where she then lived and where she died, which has been admitted to probate in that State and established there as her last will and testament, and in which her husband, the respondent, was appointed beneficiary of the property in question. This will, it is true, had not been attested by three witnesses in the presence of each other, one of the three having failed to attest in the presence of the other two, and was not, therefore, in compliance with the laws of this State, which require three witnesses to sign in the presence of each other ; and because of this. fact it is urged that the power was not executed in accordance with the will of Mrs. Harris.

Did Mrs. Harris require the power to be executed by a will made according to the laws of this State ? If so, then his honor was in error, as his holding would be contrary to the intention of Mrs. Harris, which must govern. The intention of the author of any paper, whether it be a will or any other instrument, must be reached by the language used. And the first and most important rule in endeavoring to reach the intent through the language is to give to the words employed their usual and ordinary signification. The words demanding construction here are *duly executed,* or rather the word *duly,* as there is no ambiguity about the word *executed.* What did Mrs. Harris mean by that qualifying word *duly ?* The property was hers, and she had the right to dispose of it as she saw proper. She had the right to give the whole of it to her daughter, or she had the right to dispose of it

as she did, to an appointee, to be selected by her daughter, and she had the right to require the appointment to be made in any manner she chose. And the courts should hold that the manner of the appointment directed should be complied with. Otherwise the intent will be defeated, and the will would become the will of the court, and not that of the testatrix. Now, what is the usual and ordinary meaning of the word *duly ?* According to lexicographers it means, "in a fit and becoming manner ; regularly ; properly." Such are its ordinary meanings. They do not in terms include any special legal form. But inasmuch as a last will and testament can nowhere be executed, except with some recognized legal form, this word, when qualifying the execution of such a paper, must necessarily include the idea of legal requirements.

Looking at the language, then, of Mrs. Harris, as used in her will in reference to the power given to her daughter, we conclude, first, that she intended her daughter to execute this power by a last will and testament, executed regularly and properly, that is, free from undue influence, fraud, and imposition, in accordance with law, and in proper legal form. Did Mrs. Blount execute such a paper, and as thus required ? The paper relied upon by the respondent has been declared by a Probate Court in North Carolina, where she had lived and where she died, to be the last will and testament of Mrs. Blount. Also in this State. It cannot be denied, then, that it was duly executed, including freedom from undue influence and fraud, and with the presence of all necessary legal forms, because the probate in the court of North Carolina having jurisdiction of such matters, of necessity embraces all this. Reaching this result, we conclude, second, that in so far as our judgment is to rest upon the words of Mrs. Harris's will and her intent, developed through them by the application of the usual rules of construction, that Mrs Blount properly exercised the power with which she was invested by her last will and testament now before the court.

But it is earnestly urged that Mrs. Harris did not intend this. On the contrary, that she intended that the power given her daughter should be exercised by a last will and testament, executed according to the laws of South Carolina, and in no other

way. Such a conclusion not appearing in the words of the will, can it be reached by a consideration of the circumstances by which she was surrounded at the time of her will? Where an intent is doubtful, it is sometimes proper to resort to surrounding facts and circumstances, in aid of the legal and ordinary rules of construction. Assuming the intent here to be doubtful, let the aid suggested be invoked. What were the surrounding circumstances? Mrs. Harris, during her life, was a citizen of South Carolina. She had just executed her own will in accordance with the laws of her State. She must be supposed to have known that the legal form of such papers here required three witnesses attesting in the presence of each other.

These facts, it is true, are somewhat significant. But, on the other hand, she knew that her daughter was a married woman; that her husband's residence was in North Carolina; that her daughter had no close relations here, and that after her own death she would be left alone; that under these circumstances she would in all probability go to the home of her husband, which, being the domicile of her husband, was her domicile (*Warrender* v. *Warrender*, 2 *Cl. & F.*, 488), there to reside permanently, and there, when she came to die, to make and leave her will. These facts are equally as significant as those above. And when it is remembered that no doubt it was the substance of Mrs. Harris's wish and will that her daughter should direct the disposition of the property given to her for life when she was done with it, wherever she might be; and when it is further remembered that she did not state in terms that the will of her daughter should be made under the laws of this State, but only that it should be by will duly executed, the circumstances last mentioned above seem to strongly support the conclusion reached by the analysis made of the language of her will, to wit: that her daughter's desire upon this subject, expressed in a will duly executed and established as her will in any State where she might reside, should control.

But are there any authorities or controlling decisions upon this subject? If so, where they lead we must follow. We have found none in our own State, nor have the able counsel engaged in the case referred to any in our reports where this precise question

was raised.　The English cases are not entirely clear on the point, but so far as we have examined we think their weight is in support of the conclusion we have reached above.　In *Brack* v. *Johnston* (5 *Wils. & Sh.*, 61), a Jamaica will, executed under a power reserved to be exercised by "my will, or by any separate writing or letter to that effect," passed property in Scotland. It is true, the power reserved included any separate writing or letter, but it also included a will, and a will was executed under the laws of Jamaica, and it was held sufficient.

In *D'Huart* v. *Harkness* (34 *Beav.*, 324), personal property was given by an English will to trustees, resident in England, with a power in the Baroness D'Huart to appoint, by her last will and testament in writing duly executed.　The baroness domiciled in France, made her will in France, which was valid by the law there, but not by the English law.　Lord Romilly held : "That a power to appoint by will simply may be executed by any will which according to the law of this country is valid, though it does not follow the forms of the statute."　It is urged, however, that this decision was made after the passage of Lord Kingsdown's act, which provided, that as to personal property a will by a British subject, if valid where made, should be valid in England, and although Lord Kingsdown's act had not gone into effect in England, yet that it influenced the opinion of the court. Lord Romilly does not allude to this act.

In Pennsylvania, the noted case known as *Bingham's Appeal* (64 *Pa. St.*, 346), seems to point in the other direction, though the precise question is not discussed.　In that case, William Bingham, a citizen of Pa., bequeathed certain personal property to trustees in Pennsylvania with power to Alexander Bingham to appoint by his last will and testament.　Alexander died, domiciled in England, possessed of an estate of his own, which he bequeathed to certain parties, not mentioning the estate over which he had power to appoint.　Under the English law such a will would pass both his own estate, and the estate covered by the power, but in Pennsylvania it would not.　The question before the Pennsylvania court was, which law should govern.　The court held that the law in Pennsylvania controlled.　That case, however, did not involve the question raised here.　Here the

question is one of intention on the part of Mrs. Harris as to the *form* in which the power should be executed. She had the right to give her daughter a power to make an appointment by her will duly executed in any State, and the question is, did she grant such a power?

In the Bingham appeal, the question was one of law, as to the proper *construction* of the alleged executed power, to wit, whether the will as executed by Alexander Bingham, not mentioning the estate over which he had power, carried said estate. Did the will as executed without reference to the power furnish such intent? It did not in Pennsylvania, but it did in England, and the point was, which should control? The question there was the intent of the donee of the power, not that of the donor. Here it is the intent of the donor; that of the donee is plain and evident. There, it being the law in Pennsylvania that no power of the kind could be executed except by reference to the power, this determined the intent of the donee; but here there is no law holding that such power cannot be executed except by a will executed under the laws of this State. The donor may permit any *form*, to wit, a will executed elsewhere, and the question is, has she done so?

In Massachusetts, in the case of *Sewall* v. *Wilmer* (132 *Mass.*, 131), Chief Justice Gray said: "As to the form of executing the power, it would seem that a will executed in the form authorized by the law of either State would be sufficient." And he cites *Willock* v. *Ouchterlony*, 3 *Paton*, 659; *Brack* v. *Johnston*, 5 *Wils. & Sh.*, 61, *supra;* and *D'Huart* v. *Harkness*, 34 *Beav.*, 324, *supra.*

It is said that these cases all involved personal property alone. That is perhaps true, but the character of the property is not before us; it is the principle applicable to cases like this before the court, that we are after. In these cases the *lex domicilii* could not have controlled the question, because the personal property involved did not belong to the party executing the powers, and therefore the law of his domicile could have had no application.

It is urged that real estate cannot pass, unless the forms of law permitting it to pass have been strictly complied with, and that as to wills the statute requires at least three witnesses. This

would be conclusive if respondent's claim depended upon the will of his wife passing to him title to the real estate in contest, but this is not the fact. He claims under the will of Mrs. Harris, which, it is admitted, was executed with all due legal formality, three witnesses, and all other requisites.

So that it appears to us at last, that although no direct and positive decision on the precise question before us has been found, yet that distinguished and learned judges and courts, both of this country and England, have indicated an opinion in accordance with our conclusion above. And in the absence of all controlling adverse authority, we feel constrained to affirm the judgment below of his honor, Judge Wallace.

And we are the better satisfied with this result, because we feel assured, that the purpose of Mrs. Harris was to give her daughter complete control. Had she desired to have Mrs. Blount to execute a will under the laws of this State, a few words more, in her own will, would have conveyed this idea clearly and without doubt, to wit, after "duly executed" to have inserted "according to the laws of this State." The will of Mrs. Harris seems to have been carefully drawn, and if she intended as suggested, the failure to insert the words above, was a strange omission. On the contrary, had she intended to leave Mrs. Blount in complete control with power not to dispose of the property, but to nominate an appointee thereto by her last will, under Mrs. Harris's will, wherever she might live and die, what more appropriate words could she have used than those she did use?

Such evidently being the wish of Mrs. Harris, and the property being hers, with absolute control over it, her intent should be carried out, if by a proper and reasonable construction of the papers this can be done; or, at least, no strained construction should be resorted to, the effect of which is to defeat the intent.

For the reasons given above, I am unable to concur in the opinion of the majority.

Judgment reversed.

A petition was filed for the rehearing of this case, but it was refused, May 12, 1888, *per curiam*, "no fact or principle material to the issue having been overlooked."